W.B. OSBORN, Jr., Appellant,

v.

TEXAS OIL & GAS CORP., a corporation; Floyd Hampsten, individually and as trustee under the will of Helen M. Hampsten, deceased; Karen Hampsten; and Corporation Commission of Oklahoma, Appellees.

No. 56,362.

Court of Appeals of Oklahoma, Division No. 2.

Nov. 16, 1982.

As Corrected Dec. 13, 1982.

Rehearing Denied Dec. 30, 1982.

As Corrected on Denial of Rehearing March 10, 1983.

Released for Publication by Order of Court of Appeals April 8, 1983.

William N. Christian, Oklahoma City, for appellant.

Robert A. Miller, Susan E. Ross, Crabtree & Miller, Oklahoma City, for appellee Texas Oil & Gas Corp.

H.B. Watson, Jr., Lee K. Simpson, Watson, McKenzie & Moricoli, Oklahoma City, for appellees Floyd Hampsten and Karen Hampsten.

Jan Eric Cartwright, Atty. Gen., Oklahoma City, for appellee State.

BRIGHTMIRE, Judge.

The ultimate question here is whether the corporation commission—once it found that a gas well offsetting a water driven secondary recovery unit maintained by gas pressure was "causing waste and [would] continue to . . . so long as it is produced"—had authority to either shut the well in or permanently limit its production to a non-wasteful level. The commission concluded it did not have such authority. We hold, however, it did and remand the case for further proceedings.

I

The orientational facts are that a six-section oil and gas recovery unit in Woods County, Oklahoma, was created February 17, 1969, by the corporation commission. The unit, called the Northwest Avard Hunton Lime Unit, consisted of three northern sections (18, 17 and 16) and three southern sections (19, 20 and 21). At the time the

unit was formed it was thought to have included all of the Hunton Lime source of supply—a combination gas-oil reservoir. A series of gas wells in the northern sections were shut in and the gas pressure was used to resist the lateral flow of oil being driven northward by water injected south of the unit and recovered through several oil wells.

On February 8, 1980, Texas Oil & Gas Corp. completed what it called the Hampsten "A" No. 1 well in section 13—a section that adjoined unit section 18 to the west. The Hampsten well was a gas producer and was located near the midline of the section and about 330 feet west of the west boundary of section 18.

Taking note of this development the unit operator, W.B. Osborn, Jr., filed an application with the commission on April 29, 1980, stating that he had pursued a conservation-oriented policy of producing only oil from the reservoir and using the gas pressure to maximize oil recovery. Osborn further alleged that he was doing very well until the Hampsten well was drilled. Once completed that well began to produce "in such quantities and in such manner as unreasonably to reduce reservoir pressure and . . . diminish the quantity of oil that might be recovered from" the reservoir. And, unless such gas production is limited to a proper allowable, he stated, large volumes of oil will be lost by encroachment of water into oil bearing strata and by movement of oil into the dry gas area of the reservoir. Hence, the commission was requested to limit the Hampsten well production from the Hunton Lime to a daily rate of not more than 250,000 cubic feet of gas.

On the same day, April 29, Osborn sought an emergency order limiting production from the Hampsten well. This was heard by the commission en banc the next day and denied.

Eventually the commission heard the application and on January 5, 1981, entered an order in which it summarized partisan contentions and applicant's evidence and then made this finding: "Taking into account all of the facts and circumstances, the Hampsten "A" No. 1 well is causing waste and will continue to cause waste so long as it is produced; and although the commission has the duty and responsibility to prevent waste, such duty may be carried out only in the manner prescribed by law."

Linked to this was the legal conclusion that since the Hampsten well "is not within the unitized area of the Northwest Avard Hunton Lime Unit and since the Royalty Owners in the Hampsten acreage object to the proposal of Texas Oil · & Gas Corp. to limit production to one million cubic feet of gas per day, the Commission cannot permanently shut in the Hampsten . . . well, or permanently limit the allowable for that well below" the allowable set by statute or commission rules.

The commission then turned around, however, and referred to an earlier finding of its Administrative Review Panel to the effect that the "protesting royalty owners will not be permanently damaged if reasonable temporary restrictions are placed on" the Hampsten production, not to reduce waste, but to induce the parties "to reach an agreement that will aid the Commission in preventing waste and protecting correlative rights . . . ."

The commission not only adopted the conclusion of its review panel but also the "temporary restrictions" the panel came up with, namely, that the Hampsten will "be permitted to produce not to exceed 250,000 cubic feet of gas per day during the months of December, 1980, and January, 1981, and should be permitted to produce not to exceed 500,000 cubic feet of gas per day during the month of February, 1981, and not to exceed 750,000 cubic feet of gas per day during the month of March, 1981 and in like manner the allowable should increase at the rate of 250,000 cubic feet of gas per day each month until the well is producing its normal allowable . . . ."

And save for this the commission denied Osborn's plea for relief.

## II

The commission incorrectly assessed its authority and duties with regard to the Hampsten well.[1]

■ The state has the constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders. *Champlin Ref. Co. v. Corporation Comm'n,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932).

The term "waste" as defined by statute in connection with the production of oil includes, in addition to its ordinary meaning, economic waste, underground waste, water encroachment in an oil and gas bearing strata, the use of reservoir energy for oil-producing purposes that unreasonably interfere with obtaining from the common source of supply the largest ultimate recovery of oil, etc. And further, the production of oil in this state "in such manner and under such conditions as to constitute waste . . . is hereby prohibited, and the Commission shall have the authority, and is charged with the duty, to make . . . orders for the prevention of such waste . . . ." 52 O.S. 1981 § 86.2. Another section deals with the subject of gas waste defining it as being, among other things, the inefficient utilization of gas from gas or oil wells in the operation of oil wells producing from a common source of supply and the production of gas in such quantities as will unreasonably diminish the quantity of recoverable oil or gas. Such waste is "prohibited" and the commission has authority to enforce the prohibition by order. 52 O.S.1981 §§ 86.3, 236–38.

Neither the royalty owners, Floyd and Karen Hampsten, nor the lessee, Texas Oil & Gas, nor the commission challenge this law but contend we are required to affirm subject order because it "is supported by substantial evidence."

Certainly if the issue were whether sufficient evidence supported challenged findings of the commission then of course the standard of review would be the substantial evidence criterion. *Dodds v. Ward,* Okl., 418 P.2d 629 (1966). But such an issue is not raised by Osborn. Osborn's contentions rest on the principal finding of the commission—a finding of a fact not only supported by substantial evidence but disputed by neither party—namely, that the Hampsten well is now and always will cause waste.

■ Once that fact was found the authority specified in the energy conservation statutes we reviewed earlier became operative and triggered the commission's duty to take the necessary action to curb the waste. This duty is shirked by proclaiming correctional impotence.

That part of the order appealed denying the relief sought by Osborn is therefore vacated and the cause is remanded to the commission for further proceedings non inconsistent with the views expressed in this opinion.

BOYDSTON, P.J., concurs.

BACON, J., concurs in result.

---

1. It seems somewhat inconsistent to say on the one hand the commission has no authority to impose production restrictions to permanently prevent waste and on the other hand to hold it has power to do so on a temporary basis.